

# IN THE
# TENTH COURT OF APPEALS

————————

## No. 10-21-00089-CV

## IN THE INTEREST OF L.L.L., A CHILD

————————

### From the 77th District Court
### Limestone County, Texas
### Trial Court No. CPS-351-A

## MEMORANDUM  OPINION

In three issues, the Father of L.L.L. ("Father") appeals the trial court's termination of his parental rights.  The mother of L.L.L. ("Mother") voluntarily relinquished her parental rights and is not a party to this appeal.  The trial court determined that Father had violated subsections (D), (E), and (O) under § 161.001 of the Family Code and that termination was in the child's best interest.  *See* TEX. FAM. CODE ANN. §§ 161.001(b) (1) (D), (E), and (O) and 2.  We will affirm.

### *Issues*

Father presents the following issues:

First Issue:      The court abused its discretion by denying an extension.

| Second Issue: | The Department presented no evidence or factually insufficient evidence to prove an endangering environment. |
|---|---|
| Third Issue: | The Department presented no evidence or factually insufficient evidence to prove an endangering course of conduct. |

Father does not contest the trial court's findings that he violated subsection (O) and that termination is in the best interest of the child.[1]

*Background*

L.L.L. was born in May 2017 while both parents were incarcerated. Between the time of her birth and Father's release from custody in November 2017, L.L.L. was cared for by Mother's sister and then by a woman who led 12-step and Christian Ministry classes at the jail where Father was in custody. Father was reluctant to have L.L.L. cared for by Mother's family. Father took custody of L.L.L. when he was released. Mother was subsequently released from incarceration in February 2018. Father, Mother, and L.L.L. all lived together; first in Austin and then in Burnet when Father went to work with a company out of Marble Falls. In February 2020, Father was arrested for DWI.

L.L.L. came to the attention of the Department in March 2020 after Father made a complaint that Mother was using marijuana and methamphetamine and neglecting L.L.L. Father and Mother, who married in August 2018, had separated and were

---

[1] While violation of subsection (O) may alone support the termination of parental rights, a parent's challenge to the sufficiency of the evidence regarding violations of subsections (D) or (E) must also be reviewed due to the concerns of collateral consequences in the future. *See In re N.G.*, 577 S.W.3d 230, 235 (Tex. 2019).

sharing alternate physical custody of L.L.L. at the time of Father's complaint. Father's complaint was triggered by Mother's refusal to return L.L.L. to him. When the Department investigated, Mother also accused Father of using marijuana and methamphetamine as well as alcohol. Mother agreed to return L.L.L. to Father on March 27, 2020.

During the Department's investigation, Mother and Father both tested positive for methamphetamine. Father admitted to the Department investigator that he had used methamphetamine in January. During a divorce hearing in April, the trial court ordered L.L.L. removed from her parent's custody and placed with the Department. A drug test administered to L.L.L. was positive for methamphetamine. L.L.L. was first placed with a couple who cared for her prior to Father's release from incarceration, then placed with a couple who were related to Father.

Also in April 2020, Father was directed to complete a number of tasks through a Family Service Plan, which he did not complete. Father completed some outpatient drug therapy and entered an in-patient drug facility in September. Father completed a twenty-day program, then was arrested in October for burglary and fraudulent use/possession of another's identifying information. Father entered pleas of guilty to both offenses. The stipulation of facts that Father swore to reflects that the offenses were committed on July 31, 2020 (burglary) and September 30, 2020 (identifying information). Father again tested positive for methamphetamine after a drug test in December 2020, although he denied using methamphetamine after he was released

from the in-patient drug facility. Prior to his incarceration in October, Father failed to complete two required drug tests.

Mother has a history of drug use and a history with the Department. Mother was pregnant with her third child when she and Father began a relationship in 2015. The child was removed after testing positive for drugs at birth. Father was present for at least two of the Department hearings involving this child, asking for the child to be placed with him. Mother voluntarily relinquished her parental rights to this child as she did with two other children and with L.L.L. Father admitted to the Department investigator that he was aware of Mother's history with the Department and her history of drug use.

Father has an extensive criminal history beginning while he was still a juvenile. Father has been either in custody or on some form of supervision for the majority of L.L.L.'s life.

*Discussion*

A. Extension. In his first issue, Father argues that the trial court abused its discretion in denying his request for a six-month extension of the final termination hearing and dismissal date in order to allow him to complete the court-ordered services. In his motion and at a hearing before the trial court, Father argued that his incarceration and in-patient drug treatment delayed his ability to complete his service plan.

The trial court orally denied the motion at the permanency hearing held on March 5, 2021, noting:

I can't make - - I cannot make a finding based on this case that extraordinary circumstances exist. Indigent - - exigent, I might could; but extraordinary, I cannot because I don't think that extraordinary circumstances have existed other than the fact that [the parents] have - - [the parents]'ve gotten incarcerated. And so I'm denying that extension.

A trial court's ruling on a motion for extension is reviewed for an abuse of discretion. *In re K.-A.B.M.*, 551 S.W.3d 275, 283 (Tex. App.—El Paso 2018, no pet.). A trial court abuses its discretion when it acts "without reference to any guiding rules or principles." *In re M-I L.L.C.*, 505 S.W.3d 569, 574 (Tex. 2016) (quoting *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986)); *see also In re J.S.S.*, 594 S.W.3d 493, 500 (Tex. App.—Waco 2019, pet. denied). The trial court's judgment will be reversed "when it acts arbitrarily, unreasonably, or without reference to legal principles." *Berkel & Co. Contractors, Inc. v. Lee*, 612 S.W.3d 280, 287 (Tex. 2020).

The trial court may maintain a suit on the court's docket after the one-year period mandated by the Family Code if the court makes a finding that "extraordinary circumstances necessitate the child remaining in the temporary managing conservatorship of the department and that continuing the appointment of the department as temporary managing conservator is in the best interest of the child." TEX. FAM. CODE ANN. § 263.401(b). A circumstance such as incarceration is not necessarily an "extraordinary circumstance" that merits an extension. *See In re M.S.*, 602 S.W.3d 676, 680 (Tex. App.—Texarkana 2020, no pet.) (parent's incarceration generally viewed as parent's fault and not extraordinary circumstances); *see also In re C.G.*, No. 02-20-00087-CV, 2020 WL 4518590 at *3 (Tex. App.—Fort Worth Aug. 6, 2020, pet. denied)

(mem. op.) ("[A] parent's inability to complete services due to confinement is not an extraordinary circumstance but is instead the consequence of poor choices. . . . [P]arents cannot blunder their way into extraordinary circumstances.").

Father committed two offenses after the time that L.L.L. was removed from his custody. Father's actions are what led to his incarceration and do not constitute an extraordinary circumstance justifying an extension. Nor was Father's voluntary admission into an in-patient drug treatment program an extraordinary circumstance. The program was only twenty days out of the approximately 180 days between the implementation of the service plan and Father's incarceration. The trial court did not abuse its discretion in denying Father's request for an extension. Father's first issue is overruled.

B. § 161.001. In a proceeding to terminate the parent-child relationship brought under § 161.001, the Department must establish by clear and convincing evidence two elements: (1) that one or more acts or omissions enumerated under § 161.001(b)(1), termed a predicate violation, were committed; and (2) that termination is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(b)(1), (2); *In re S.L.*, 421 S.W.3d 34, 37 (Tex. App.—Waco 2013, no pet.). "Clear and convincing evidence" is defined as "that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *In re K.M.L.*, 443 S.W.3d 101, 112 (Tex. 2014) (quoting TEX. FAM. CODE ANN. § 101.007). As previously noted, Father does not challenge the trial court's finding that termination is in the best interest of L.L.L.

In his second and third issues, Father argues that there is no evidence and factually insufficient evidence to support the trial court's findings that he violated subsections (D) and (E).

> In a legal sufficiency review, a court should look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. To give appropriate deference to the factfinder's conclusions and the role of a court conducting a legal sufficiency review, looking at the evidence in the light most favorable to the judgment means that a reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible.

*In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002); *see also In re S.L.*, 421 S.W.3d at 38.

In a factual sufficiency review, a court of appeals must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing. *In re J.F.C.*, 96 S.W.3d at 266.

> [T]he inquiry must be "whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." A court of appeals should consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding. If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient.

*In re J.F.C.*, 96 S.W.3d at 266 (footnoted citations omitted); *see also In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002).

When no findings of fact or conclusions of law are filed following a bench trial, the trial court's judgment implies all findings necessary to support it. *See Missouri*

*Pacific R. Co. v. Limmer*, 299 S.W.3d 78, 84 n.29 (Tex. 2009) (citing *Pharo v. Chambers County*, 922 S.W.2d 945, 948 (Tex. 1996)); *see also In re D.Z.*, 583 S.W.3d 284, 295 (Tex. App.—Houston [14th Dist.] 2019, no pet.). "However, where a reporter's record is filed, as in this case, these implied findings are not conclusive, and an appellant may challenge them by raising both legal and factual sufficiency of the evidence issues." *In re G.B. II*, 357 S.W.3d 382, 385 n.1 (Tex. App.—Waco 2011, no pet.).

We give due deference to the factfinder's findings and must not substitute our judgment for that of the factfinder. *See In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). The factfinder is the sole judge "of the credibility of the witnesses and the weight to give their testimony." *Jordan v. Dossey*, 325 S.W.3d 700, 713 (Tex. App.—Houston [1st Dist.] 2010, pet. denied). The factfinder may choose to believe one witness and disbelieve another. *City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005).

1. <u>Predicate Finding Under Subsection (E)</u>. Termination under § 161.001(b)(1)(E) requires clear and convincing evidence that the parent has "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." TEX. FAM. CODE ANN. § 161.001(b)(1)(E). "Endanger" means to expose to loss or injury, to jeopardize. *In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996) (*per curiam*); *see also In re J.R.*, 501 S.W.3d 738, 743 (Tex. App.—Waco 2016, no pet.). While "endanger" requires "more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment, it is not necessary that the conduct be directed at the child or that the child actually suffers injury." *In re M.C.*, 917 S.W.2d at 269.

When termination is based upon subsection (E), the relevant inquiry is whether evidence exists that the endangerment of the child's well-being was the direct result of the parent's or another's conduct, including acts, omissions, or failures to act. *In re K.A.S.*, 131 S.W.3d 215, 222 (Tex. App.—Fort Worth 2004, pet. denied); *see also In re E.M.*, 494 S.W.3d 209, 222 (Tex. App.—Waco 2015, pet. denied). A factfinder properly may consider actions and inactions occurring both before and after a child's birth and also may consider conduct occurring both before and after the Department removed a child from the home. *In re F.E.N.*, 542 S.W.3d 752, 763-64 (Tex. App.—Houston [14th Dist.] 2018), pet. denied, 579 S.W.3d 74 (Tex. 2019) (*per curiam*). A parent's past endangering conduct may create an inference that the parent's past conduct may recur and further jeopardize a child's present or future physical or emotional well-being. *See In re D.M.*, 58 S.W.3d 801, 812 (Tex. App.—Fort Worth 2001, no pet.). A parent's conduct that subjects a child to a life of uncertainty and instability endangers the child's physical and emotional well-being. *F.E.N.*, 542 S.W.3d at 764. Criminal activity, convictions, and incarcerations are among the types of actions or omissions that subject a child to a life of uncertainty and instability. *See In re V.V.*, 349 S.W.3d 548, 554 (Tex. App.—Houston [1st Dist.] 2010, pet. denied); *see also In re S.M.*, 389 S.W.3d 483, 492 (Tex. App.—El Paso 2012, no pet.) ("Evidence of criminal conduct, convictions, imprisonment and its effects on a parent's life and ability to parent may establish an endangering course of conduct.").

In this case, Father has been involved in criminal activity from when he was a juvenile in 2002 up until his arrest in October 2020—an 18-year history of criminal

behavior. Father was placed on deferred adjudication, probation, shock probation, and any number of drug programs. However, his criminal behavior continued even after L.L.L. had been removed from his custody, committing two more offenses that resulted in his incarceration. Father entered pleas to both offenses on the day the final termination hearing was held. Father also was arrested for DWI, and the charges remained pending after the final termination hearing was concluded.

Father also exhibited continued abuse of illegal drugs, testing positive prior to and after L.L.L.'s removal. Substance abuse "can qualify as a voluntary, deliberate, and conscious course of conduct endangering the child's well-being." *In re K.H.*, No. 10-21-00073-CV, 2021 WL 4080261, at *4 (Tex. App.—Waco Sept. 8, 2021, no pet. h.) (mem. op.).

> A parent's illegal drug use and drug-related criminal activity may . . . support a finding that the child's surroundings endanger his or her physical or emotional wellbeing. And "[b]ecause it exposes the child to the possibility that the parent may be impaired or imprisoned, illegal drug use may support termination under section 161.001(1)(E)." . . . A parent's continued drug use demonstrates an inability to provide for the child's emotional and physical needs and to provide a stable environment for the child.

*In re M.R.R.*, No. 10-15-00303-CV, 2016 WL 192583, at *5 (Tex. App.—Waco Jan. 14, 2016, no pet.) (mem. op.) (citations omitted); *see also In re Z.C.*, 280 S.W.3d 470, 474 (Tex. App.—Fort Worth 2009, pet. denied).

Father exhibited a pattern of continued drug use, testing positive for methamphetamine before and after L.L.L.'s removal. Father's drug use and continued criminal activity constitute a danger to L.L.L.'s physical and emotional wellbeing.

The evidence is legally and factually sufficient to support the trial court's determination that Father violated § 161.001(b)(1)(E). We overrule Father's third issue. Because we affirm the trial court's finding that Father violated subsection (E), we need not address his second issue that challenges the trial court's finding in relation to subsection (D).

## *Conclusion*

Having overruled Father's first and third issues, we affirm the trial court's judgment.

MATT JOHNSON
Justice

Before Chief Justice Gray,
      Justice Johnson, and
      Justice Smith,
Affirmed
Opinion delivered and filed October 6, 2021
[CV06]

